Syllabus.

Staunton.

OSBORNE V. GILLENWATERS.

September 16, 1920.

1. DEEDS—*Delivery—Appeal and Error—Conflicting Evidence—Case at Bar.*—A mother deeded a tract of land to her son. In a suit to subject the land to a lien on a judgment against the son, respondents contended that there was no manual or other transmission of the deed by the grantor; that possession was retained by the mother upon an understanding that she would deliver the same, provided that her son would quit drinking; that there was no valuable consideration moving from the son to the mother, entitling him to demand the delivery of the deed. Hence, upon the failure of the son to meet the conditions imposed by his mother, the mother was free to do as she pleased with the land, and that after the institution of the suit she had deeded the land to her son's wife. On the other hand, it was contended that the defense that the mother had retained the deed was a makeshift and an afterthought, and that it was an ordinary case in which acknowledgment of the deed was followed by delivery to the grantee, thereby closing and making complete the transaction. The deed while in the mother's possession had been accidentally destroyed by fire. The evidence was conflicting, and the case turned upon the credence to be extended to the witnesses, and the weight proper to be given to admitted facts.          ,

   *Held:* That it could not be said that the decree of the circuit court subjecting the tract to the lien of the judgment against the son was plainly wrong, or without evidence to support it; hence, it must be affirmed.

2. APPEAL AND ERROR—*Weight Attached to Decree of Circuit Court.*—The decree of a circuit court is always entitled to respect, and there is always a presumption in its favor.

Appeal from a decree of the Circuit Court of Russell county. Decree for complainant. Defendants appeal.

*Affirmed.*

The opinion states the case.

*W. W. Bird* and *R. S. Meade,* for the appellant.

*Finney & Wilson,* for the appellee.

SAUNDERS, J., delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court of Russell county, subjecting a tract of about forty acres of land to the debts of S. S. Osborne. The history of the case and the pertinent facts will be briefly given.

Una V. Gillenwaters brought a bill in chancery in the court *supra,* to enforce the lien of a judgment against the said Osborne. An account of liens was ordered in this suit, and the commissioner taking the account reported that the defendant, S. S. Osborne, owned two tracts of land, one devised to him by his father, acreage not reported, and the other a tract of about forty acres, which for convenience sake will be hereafter referred to as the forty-acre tract. This latter tract, according to the report, had been conveyed to Osborne by his mother, but he had failed to record the deed. Subsequently, the plaintiff filed an amended bill, setting forth that while Osborne was the owner of the forty-acre tract reported by the commissioner, he had on October 15, 1915, after the filing of the plaintiff's original bill, induced his mother, Helen Osborne, to convey the same to Bessie Osborne, the wife of the said S. S. Osborne, for the purpose of "avoiding having said land sold to pay the husband's debts." Helen Osborne, S. S. Osborne and Bessie Osborne were made parties defendant to the amended bill. In due course these parties filed their answer, denying that the forty-acre tract "was ever owned by S. S. Osborne." Respondents admitted that the forty-acre tract was conveyed to Bessie Osborne, as charged in the amended bill, but de-

nied that it was with intent to defraud the creditors of S. S. Osborne. Concerning this transaction, the answer alleged that the deed to Bessie Osborne was a deed of gift on the part of the grantor. This deed was duly admitted to record in Russell county.

[1] After the pleadings were completed, the parties respectively took depositions. The respondents undertook to establish the following explanation of the alleged unrecorded deed, namely, that it had been acknowledged by the grantor but was never delivered, and while in the mother's possession was accidentally destroyed by fire. The mother and the son depose that the former retained the deed to the forty-acre tract upon an express understanding that it was to be delivered to the son at the pleasure of the mother, contingent upon the reformation of the son's habits. It was with a view to this delivery that the mother had the deed prepared and acknowledged the same, retaining it thereafter in her possession, as stated, *supra.*

The expected reformation never took place, and the deed was never delivered. Later, after the deed was burned, the mother determined to give the land to her daughter-in-law, and this purpose was carried out after the suit was brought against the son by Mrs. Gillenwaters. Conceding this account of the preparation and retention of the deed to be true, it was perfectly competent for the mother, observing the continuing dissipation of the son, to make a voluntary gift of the land to her son's wife. Upon such a gift the land would become the sole property of the wife, free from the debts of her husband. The transaction would be free from fraud, and valid in all respects.

But the record is not lacking in evidence to establish the contentions of the original and amended bill, that the deed was made and delivered to the son, and that later, after its accidental destruction, the scheme was devised to have the mother convey the land to the wife, with the idea of defeat-

ing the claims of the husband's creditors. The case is purely one of fact. If the deed was originally made and delivered, as alleged, the subsequent conveyance by the mother was ineffective to accomplish her fraudulent design. According to the testimony of N. T. Jesse, who took the grantor's acknowledgment and prepared the deed at the direction of the mother, Mrs. Helen Osborne, the latter came in person to see him in relation to making the deed to her son. To cite his own words, "Mrs. Osborne came to my house and said that she wanted me to go to little Sol Osborne's (S. S. Osborne)—she told me when she came that she wanted me to do a little work for her, and I went over and prepared and took the acknowledgment to that tract of forty, or forty-two acres. I prepared the deed and took the acknowledgment.

"Q. What did you do with it, after she signed and acknowledged it?

"A. My recollection is—I know I gave Mrs. Osborne the deed. She stood right by me, and my recollection is that she gave S. S. Osborne the deed.

"Q. Was he also standing by?

"A. Yes, sir, right by me at a little table in the house, and Mrs. Osborne said to me that it seemed like her husband had not made little Sollie equal with the balance of the boys, and that she was deeding him that tract of land, so that he would have a little stay place."

On cross-examination, the witness repeated his statements as to delivery as follows:

"Q. I believe you state that you are rather certain that when you wrote the deed you handed it to Mrs. Helen Osborne?

"A. Yes, sir, I am, and I think that she just handed it to Sol.

"Q. When you left, she and Sol were together?

"A. Yes, sir.

"Q. You don't know whether or not she handed it to Sol?

"A. I think she did, Mr. Meade. I wouldn't want to say a thing unless I was about positive, because I have nothing against the people, but I think Mrs. Osborne handed it to Sol."

According to the witness the deed was "in fee simple, without reservations."

Later, Jesse was recalled for further cross-examination, and counsel for the defendants below returned to the inquiry about delivery.

"Q. I believe that you stated in your deposition heretofore that after you prepared the deed, you then delivered it to Mrs. Osborne, was your best recollection at that time?

"A. Well my recollection is that Aunt Helen, or Mrs. Osborne, was right by me when I took the acknowledgment, and I handed her the deed, and she handed it to Sol, is my recollection."

This alleged deed to S. S. Osborne was made some time in 1909, but the exact date is not definitely given. Mrs. Helen Osborne's husband died approximately in 1907, and from the date of his death forward, we find the son living on the forty-acre tract, apparently in full control and enjoyment of the same, building a dwelling house on it, and using the land as a basis of credit. In 1914, E. T. Stallard and S. S. Osborne made an order for machinery upon the firm of Cole Bros., at Chilhowie, Va. The concern was unwilling to give credit to Stallard alone, but after Osborne made a statement of the property, real and personal, alleged to be owned by him, the credit was extended to the two. This statement, signed by Osborne and dated October 6, 1914, is as follows:

"For the purpose of obtaining possession of the property herein specified, I certify that I own, and have a deed in my own name for, one hundred acres of land in the town of . . . . . . . . . . ., county of Russell, State of Virginia, worth

at a fair valuation thirty dollars per acre. It is not encumbered by mortgage, or otherwise, except to the extent of $......... I also have personal property to the extent of three hundred dollars, over and above all my debts and liabilities, other than the above mortgage, on hand. Signed this 6th day of October, 1914.          S. S. OSBORNE."

S. C. Cole, of the firm of Cole Bros., testifies in this case in part as follows:

"Q. Did Mr. Osborne, or not, tell you at that time how he acquired this 100 acres of land?

"A. I think he did. I came here to the clerk's office and looked up the will of his father by which he explained he acquired the fifty acres, and I made no effort to find the other, because I had the impression that he had a deed, and had not put it on record.

### Cross-Examination.

"Q. Upon examination of the records here, did you find any deed to S. S. Osborne for any land?

"A. I did not look for any deed to S. S. Osborne. I found where his father had willed him a tract of land.

"Q. What were you looking for then?

"A. What his father had willed him, and whether it was encumbered. Mr. Osborne had explained to me that his land was not on record, this second tract.

"Q. Well it would not be if it was willed to him, would it?

"A. That was not the second tract. It was not willed to him, it was deeded. The first was willed by his father, and the second tract deeded by his mother."

There was more in the cross-examination of this witness to the above effect. None of the statements alleged by Cole to have been made by Osborne were denied by the latter when he went on the stand.

Mrs. Helen Osborne and her son, S. S. Osborne, give very

different versions from that given by Jesse of what passed on the day when the latter took the acknowledgment by Mrs. Osborne of the deed to her son, and contradict other statements made by Jesse on his examination and cross-examination. According to Mrs. Osborne, she had in mind to give the forty-acre tract to her son, provided he reformed. Her son was advised to this effect. With a view to the execution of her purpose in the above respect, Mrs. Osborne acknowledged the deed to her son, but retained it in her possession to see what effect her conditional promise of delivery would have upon his habits. Pending the mother's retention of the deed, it was accidentally destroyed in a fire at her house. Later Mrs. Osborne conveyed the land to her daughter-in-law, "just because she wanted her to have it." The witness denied that she went to see Jesse and asked him to come to her son's, S. S. Osborne, and do a little work for her. She states that she did not think that she went to her son's house to make a deed. Prior to that time she had stated that she "went to her son's to sign this paper, but not to deliver it to him." In this connection the witness is rather vague and uncertain. She states further that she never told her son that she had conveyed this land to him, though she had told him that she intended to do so, in the event of his reformation. The witness thought that it might have been a year after the deed was acknowledged that it was burned. S. S. Osborne testifies that his mother never gave him a deed to the forty acres, though it was understood that if he would improve his ways she would do so. This witness contradicts his mother in various particulars. He states that he knew that his mother had executed a deed to him for the land, and that he went after Jesse to write the deed; that when the latter arrived at his house, he told his mother that "she had been talking about deeding him the land, and that he (Jesse) was going to make the deed."

"Q. And then did she make it that day?

"A. Yes, sir.

"Q. And did he make it?

"A. Yes, sir, that was my understanding, that she made it to me that day when Taz. Jesse was writing it."

The witness states that after the acknowledgment of the deed he went to work on a house on the land, but later finding that his mother would not deliver the deed to him, he discontinued his building operations.    However, he continued to live on the land, even if it be true that he did not complete the house, and apparently was in full control of the same, practically down to the very time that it was conveyed to his wife.    Witness was uncertain whether he had ever heard his mother say that she had conveyed the land to his wife, though he thought that the conveyance was a gift.    This witness does not deny making the statements imputed to him in the following answers of the witness Jesse:

"Q. After the acknowledgment of the deed, did you ever hear S. S. Osborne make any statements in regard to the deed, and of paying the debts that he owed?

"A. He said time and again that he never expected to pay what his father willed him to pay his sisters.

"Q. You remember him stating about the deed?

"A. He was at my place two or three years ago, and said the deed got burned up when his mother's house was burned, and he would like to see how anybody could make these debts now.    That is all that I can remember he said about the deed.

"Q. How has he used, occupied and held the land—as his home?

"A. Yes, sir, he is staying there farming a little on it, and owns a little stock.

"Q. Claims it as his own?

"A. So far as I know."

Mrs. Bessie Osborne does not go upon the stand. The witness, Jesse, is contradicted by two witnesses for the defendants, J. H. Austin and Walter Meade. The former states that Jesse told him not a great while prior to the time that he gave his testimony in this cause, that he "had made the deed to little Sol. Osborne." Thereupon the witness asked him if he had given it to Osborne, to which Jesse replied: "No, sir, I left it laying on the table." Walter Meade, a deputy sheriff in Russell county, testifies as follows: "I summoned Jesse for the complainants once before, and he would not go, and they sent him the money, and next time he said that he did not see why they wanted him back, that he was a better witness for Sol than he was for the other side. He said that Mrs. Osborne and Sol had come to his place to have him to acknowledge the deed to Sol, and that he took the acknowledgment, and handed the deed to Mrs. Osborne, and that he never knew whether Sol ever got the deed or not." Jesse denies that he ever had the above conversations with Meade and Austin, adding that the latter was offended with him about a law suit in which "each fellow wanted him to summon his side (meaning witnesses) and not summon the other side, while he went ahead and summoned all of the parties." That after his refusal to summon only Austin's witnesses, the latter had been barely making out to speak to him.

The witness, Jesse, is a deputy sheriff in Russell county, and formerly was a justice of the peace. In concluding his testimony he states, that for thirty-five years he has been a good friend and neighbor of the Osbornes, and that personally, if he had his way, "he would rather Sol would keep his piece of land."

This case does not present any nice distinctions of law, or require any citations from the precedents of this or other States. It is purely a question of giving credence, and deriving a conclusion from conflicting testimony. The decis-

ions cited with respect to what constitutes delivery of a deed are apparently correct expositions of the law, but do not aid the court in reaching a conclusion on the facts. If full credence is given to Mrs. Osborne and her son, there was no manual or other transmission of the deed by the grantor. Possession was retained by the mother upon a definite understanding that she would deliver the same, provided her son quit drinking. There was no valuable consideration moving from the son to the mother, entitling him to demand the delivery of the deed. Hence, upon the failure of the son to meet the conditions imposed by his mother, the latter was free to do as she pleased with her own—in this instance, the forty-acre tract. The son had no legal, or equitable claim upon the land. But if it is considered that the contention of the defendants that the deed was never delivered is not sustained by the evidence, and that the defense that the mother was to retain the deed is a makeshift and an afterthought, and credence is given to Jesse and other testimony for the plaintiff, then this is an ordinary case in which acknowledgment of a deed is followed by delivery to the grantee, thereby closing and making complete the transaction. S. S. Osborne's statement that the deed was never delivered is refuted by his statements to the witness, Cole. The statements of the mother and son are in conflict on a number of points. Moreover, the son's uninterrupted use, control of, and residence upon the land for so many years support the view that he had a deed to the land, though unrecorded, as he stated to the witness, Cole. It is a suspicious circumstance that the deed to the daughter-in-law was never made until the son was involved in financial difficulties, and after the suit was brought to subject the son's lands to his debts. The son professes too little knowledge with respect to the deed to his wife. In the natural course of things, it is likely that he knew all about that conveyance. Another circumstance worthy of

note—a straw, whatever may be considered to be its weight —is that the deed to Mrs. Bessie Osborne recites a valuable consideration of three hundred dollars. No explanation is offered why this deed of gift should have recited that it was for a valuable consideration in the specific sum above recited. It is true that pure deeds of gift, for reasons given by the parties upon inquiry, are often recited to be for a valuable consideration. Frequently, the parties consider, ignorantly of course, that the recital of a consideration is essential to the validity of the transaction. But in this case, in which a deed is made to the wife after a suit has been brought to subject the land to the debts of the husband, it is a little suspicious, as noted, that the deed recites a con- sideration that from the evidence must be a fair value for the land, since its rental value, at best, was only twenty or twenty-five dollars a year. The recital of valuable consider- ation in this specific amount gives weight to the suggestion, that it was doubtless considered by the parties that it would give an appearance of *bona fides* to the transaction. Not only is no explanation submitted of this recital of valuable con- sideration, but the mother seemed to be unaware how it came to have a place in the deed. The justice who took the acknowledgment of the deed to the wife was not put upon the stand by the defendants. As pointed out, *supra,* the witnesses for the defense measurably contradict each other on points that may be fairly considered to be important, and their testimony is also in conflict with that submitted on behalf of the plaintiff. The witness, Jesse, is also con- tradicted on a material point, that of delivery of the deed. The only uncontradicted witness is H. C. Cole, who testifies to the statements made to him by S. S. Osborne, relating to having an unrecorded deed to the forty-acre tract.

The case, therefore, turns upon the credence to be ex- tended to the witnesses, and the weight proper to be given to the admitted facts. The trial judge was in a better po-

sition than this court to pass on the credibility of the witnesses, for the case arose in his own immediate county. One witness, the witness Jesse, was, and perhaps now is, an officer of his court. The same is true of Meade, one of the witnesses who contradict Jesse. Even if this court, viewing the case as if no decision had been rendered by the circuit court, was of opinion that the weight of the evidence, on the whole, favored the defendants, we could not, under familiar law, reverse the decision.

[2] "The decree of the circuit court is always entitled to respect, and there is always a presumption in its favor." *Smith* v. *Alderson*, 116 Va. 990, 83 S. E. 374.

It cannot be said of the decree of the Circuit Court of Russell county, in the case in judgment, that it is plainly wrong, or without evidence to support it; hence, it should be and is affirmed.

*Affirmed.*